IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 4079 |
| | ) |
| CHICAGO TRANSIT AUTHORITY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Nautilus Insurance Company's (Nautilus) motion for summary judgment and on Defendant Chicago Transit Authority's (CTA) motion for summary judgment. For the reasons stated below, we grant Nautilus' motion for summary judgment and deny CTA's motion for summary judgment.

## BACKGROUND

Nautilus contends that Defendant Chicago Bulk Carriers, Inc. (Bulk) entered into a contract (Contract) with CTA to perform construction work for CTA at a

specific site (Construction Site). Defendant Karry Williams (Williams) allegedly worked for CTA and was present at the Construction Site when he was allegedly injured by the negligent operation of a backhoe. Williams and his wife Eliza Williams (Eliza) brought an action in state court based on his alleged injuries, naming Bulk as one of the defendants (Williams Action). Bulk then filed a third-party complaint against CTA in the Williams Action, contending that an agent of CTA directed Bulk to operate the backhoe in an unsafe manner and CTA's negligence was in part the cause of Williams' injuries. Nautilus subsequently brought the instant action against Bulk, CTA, Williams, and Eliza. Nautilus alleges that it issued an insurance policy to Bulk (Policy) and that CTA signed an Additional Insured Endorsement for the Policy. Nautilus brought the instant declaratory judgment action. Nautilus seeks a declaratory judgment stating that: (1) the Policy does not potentially or actually cover any portion of the claims brought against CTA in the Williams Action, and (2) Nautilus does not have a duty to defend CTA in connection with the Williams Action. CTA filed a counterclaim seeking a declaratory judgment, stating that Nautilus owes CTA a duty to defend CTA in the Williams Action. Nautilus and CTA have each moved for summary judgment on their respective claims. On November 19, 2008, we granted Nautilus' motion for default against Bulk.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

CTA contends that Nautilus has a duty to defend CTA in the Williams Action under the terms of the Policy and the Additional Insured Endorsement that was signed by CTA. Under Illinois law, "the general rules governing the interpretation of other types of contracts . . . govern the interpretation of insurance policies." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)(stating that the court's "primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language"). If the language in an insurance policy "is unambiguous, the policy will be applied as written, unless it contravenes public

4

policy." *Id.* (stating that "[w]hether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation" and "[a]lthough creative possibilities may be suggested, only reasonable interpretations will be considered" and a court "will not strain to find an ambiguity where none exists"); *see also Brile for Brile v. Estate of Brile*, 695 N.E.2d 1309, 1312 (Ill. App. Ct. 1998)(stating that in construing the terms of a policy, "a court must ascertain and give effect to the intention of the parties as expressed in their agreement" and "[t]o that end, terms utilized in the policy are accorded their plain and ordinary meaning . . . unless specifically defined in the policy, in which case they will be given the meaning as defined in the policy"). In construing terms, a court must also "read the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Brile*, 695 N.E.2d at 1312 (stating that "[p]rovisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer" and "all doubts and ambiguities in the policy language must be construed in favor of the insured"); *see also Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 860 N.E.2d 307, 331 (Ill. 2006)(stating that "[t]o determine whether an insurer has a duty to defend its insured from a lawsuit, a court must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy," that "[t]he allegations must be

5

liberally construed in favor of the insured" and that "[i]f the facts alleged fall within, or potentially within, the policy's coverage, the insurer is obligated to defend its insured").

In the instant action, the Policy and the Amendatory Endorsement - Employee Exclusion provide the following exclusion (Employee Exclusion):

> This Insurance does not apply to: . . . Employer's Liability . . . 'Bodily Injury' to: (1) An 'employee' of <u>the insured</u> arising out of and in the course of: (a) Employment by <u>the insured</u>; or (b) Performing duties related to the conduct of <u>the insured's</u> business. . . .

(D Ex. D)(emphasis added). The Additional Insured Endorsement for the Policy provides in part the following:

> WHO IS <u>AN INSURED</u> (Section II) is amended to include as an insured [CTA] and only for liability <u>arising out of [Bulk's] negligence</u> and only for occurrences or coverages not otherwise excluded in the policy to which this endorsement applies. . . .
> Your policy is primary in the event of an occurrence caused by your sole negligence as respects the job described below: . . . .
> All other Terms and Conditions of this Insurance remain unchanged.

(D Ex. D)(emphasis added). Nautilus argues that CTA is excluded from coverage under the Employee Exclusion. Nautilus also contends that CTA does not have a basis for coverage as an indemnitee nor under the Supplementary Payments Provisions in the Policy. CTA does not seek coverage as an indemnitee nor under the Supplementary Payments Provisions in the Policy. CTA's sole argument is that it is not excluded from coverage under the Employee Exclusion.

6

### A. Use of Different Phrases in Policy

CTA argues that the original policy and the amendment to the policy use different phrases in reference to which insured party is subject to the Employee Exclusion provisions of the Policy. CTA contends that the Employee Exclusion applies to "the insured" in the original policy and that the amendment to the original policy references CTA as "an insured." (D Ex. D). However, CTA's argument is not persuasive. The original Policy excluded coverage for employees of the insured, which at the time of the original Policy was only Bulk. The amendment to Bulk's Policy included CTA as an additional insured, but specifically indicated that CTA, as an insured, would have insurance coverage "only for liability arising out of [Bulk's] negligence and only for occurrences or <u>coverages</u> not otherwise excluded in the policy to which this endorsement applies." (D Ex. D). We note that the original Policy, Section II, titled "who is an insured," describes various individuals or entities who are covered under the Policy. The Additional Insured Endorsement amended the original Policy to include CTA as an insured and further amended Section II (Who Is An Insured). The Policy to which this endorsement applies is the original policy that specifically excludes coverage for any insured for bodily injury to "[a]n 'employee' of the insured arising out of and in the course of: (a) Employment by the

7

insured; or (b) Performing duties related to the conduct of the insured's business. . . ." CTA has not contested the fact that its employee was injured in the course of his employment or performing duties relating to the conduct of CTA's business.

We recognize that when ambiguities exist in a policy the terms must be construed in a manner to favor an insured. *See Hobbs*, 823 N.E.2d at 564 (stating that generally, the terms of an insurance policy "that limit an insurer's liability will be liberally construed in favor of coverage," but that "rule of construction only comes into play when the policy is ambiguous"); *State Farm Mut. Auto. Ins. Co. v. Villicana*, 692 N.E.2d 1196, 1199 (Ill. 1998)(stating that "[p]rovisions that limit or exclude coverage are to be construed liberally in favor of the insured and against the insurer"). However, we do not find the Policy to be ambiguous. Bulk's policy was amended to include CTA as an additional insured and the Additional Insured Endorsement not only specifically applies to the exclusion provisions contained in the original policy, but also specifies that "[a]ll other Terms and Conditions of this Insurance remain unchanged." (D Ex. D). We also note that the definitions section of the Employee Exclusion defines "employee" as a person providing "services to the insured." (D Ex. D). There is every indication in the Policy that the term "the insured" or "an insured" refers to any person or entity that is insured. Also, to the extent that any ambiguity might exist, there is no reasonable construction that would

allow CTA to avoid the Employee Exclusion. For example, if it was the CTA as opposed to Bulk that was the primary policy holder, and the terms of the policy were the same as in this case, CTA's employees would have been excluded from coverage under the terms of the policy. We note that in some instances, courts have construed the phrases "the insured" and "an insured" to have different meanings. *Brile for Brile v. Estate of Brile*, 695 N.E.2d 1309, 1312 (Ill. App. Ct. 1998); *Allstate Ins. Co. v. Smiley*, 659 N.E.2d 1345 (Ill. App. Ct. 1995); *Transamerica Ins. Co. v. South*, 125 F.3d 392, 399 (7th Cir. 1997). The cases cited above were fact specific as to the term "the insured" or "an insured." In the instant case, the references to the term "the insured" and "an insured" do not make the Employee Exclusion inapplicable to either "the insured" or "an insured." We emphasize that there is not a separate insurance policy between Nautilus and CTA and that the only policy is between Nautilus and Bulk. Bulk's insurance policy was amended to cover additional insured parties such as CTA. If there was an amendment covering other persons or organizations, such as CTA, and those persons or organizations did not have the injured party as their employee, they would each be considered "an insured" and the exclusion provisions of the Policy would not have applied to them. Under the undisputed facts, the injured person in the instant case is an employee of "an insured," namely, CTA and as such the exclusion provisions apply. Thus, based on the above, we conclude that

9

the Employee Exclusion in the Policy applies to the CTA.

B.  Arising Out of Bulk's Negligence

Nautilus also argues that even if the Employee Exclusion does not apply to CTA, CTA cannot obtain coverage under the Additional Insured Endorsement since CTA's liability does not "aris[e] out of [Bulk's] negligence." (D Ex. D). Nautilus contends that, in the Williams Action, Bulk is seeking contribution from CTA and thus CTA will only be liable for its share of the negligence causing the harm. 740 ILCS 100/2; *Virginia Sur. Co., Inc. v. Northern Ins. Company of New York*, 866 N.E.2d 149, 154-155 (Ill. 2007)(explaining that a third-party defendant is liable for contribution for its *pro rata* share). We acknowledge that such a term as "arising out of" in an insurance agreement is construed in favor of the insured, particularly when the term is ambiguous in the Policy. *See American Economy Ins. Co. v. DePaul University*, 890 N.E.2d 582, 588 (Ill. App. Ct. 2008)(stating that "Illinois courts have held that the phrase 'arising out of' is 'both broad and vague, and must be liberally construed in favor of the insured'")(quoting in part *Maryland Cas. Co. v. Chicago and North Western Transp. Co.*, 466 N.E.2d 1091, 1092 (Ill. App. Ct. 1984)). However, if Bulk is found liable, the only way CTA can be found contributorily liable is if CTA was independently negligent to a degree. CTA can be found liable

for its own negligence, not the negligence of Bulk. Thus, under the contributory negligence scenario, CTA is not covered under the Additional Insured Endorsement since CTA's liability would not have arisen out of the negligence of Bulk. We also note that Nautilus has moved for summary judgment concerning its duty to indemnify CTA or indemnify Bulk in connection with any indemnification obligation owed by Bulk to CTA. We agree with Nautilus that there is no basis in the Policy or the amendment to the Policy as to a duty by Nautilus to defend or indemnify CTA either as an indemnitee, under the Supplementary Payments Provisions, or any other provision. CTA has also not shown that Nautilus has any duty to defend or indemnify Bulk in connection with any indemnification obligation owed by Bulk to CTA. Therefore, we grant Nautilus' motion for summary judgment in its entirety and deny CTA's motion for summary judgment.

## CONCLUSION

Based on the foregoing analysis, we grant Nautilus' motion for summary judgment in its entirety and deny CTA's motion for summary judgment.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 27, 2009